# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAYMOND D. WORMACK,         )
         )
     Plaintiff,         )
         )
     v.         )     Civil Action No. 2:09-cv-916
         )     Judge Nora Barry Fischer
         )
ERIC K SHINSEKI, Secretary,         )
Department of Veterans Affairs Agency,         )
         )
     Defendant,         )
         )

## MEMORANDUM OPINION

Before the Court is Defendant Eric Shinseki's ("Defendant") Motion to Dismiss *pro se* Plaintiff Raymond D. Wormack's ("Plaintiff") Complaint. (Docket No. 5). To rule on this motion, the Court must consider whether Plaintiff, proceeding *pro se*, has plausibly stated his two claims – alleging race discrimination, gender discrimination, retaliation and harassment in the workplace in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"), and alleging that female coworkers were paid more than him in violation of the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). For the following reasons, the Court finds that, even considering his *pro se* status, Plaintiff has not successfully stated a plausible claim under either statute; therefore, Defendant's Motion is **GRANTED** and Plaintiff's Complaint is dismissed.

## I.  FACTUAL BACKGROUND

In consideration of Plaintiff's *pro se* status, the following facts are drawn not only from his initial Complaint (Docket No. 1), but also from his other representations to the Court, including the various documents submitted to the Court and Plaintiff's testimony under oath at a hearing in this

matter. (Docket Nos. 35, 36). The parties do not contest the authenticity of any of these submissions. Although the veracity of some of the following facts is contested by Defendant, a court, when evaluating a motion to dismiss, accepts as true all of a plaintiff's factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Accordingly, the following factual recitation is drawn from the various submissions before the Court and construed in a light most favorable to Plaintiff.[1]

Plaintiff, an African-American male, is an employee of the Veterans Administration ("VA") and claims that he has been discriminated against on the basis of his race and gender and retaliated against in response to his brother's filing of similar discrimination claims with the United States Equal Employment Commission ("EEOC") against the VA.[2] (Docket No. 1).

---

[1]

While a court's review of a motion to dismiss is ordinarily limited to the contents of the complaint, and any attached exhibits, a court may consider some evidence beyond a complaint on a motion to dismiss "including . . . , documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case." *Core Const. & Remediation, Inc. v. Village of Spring Valley, NY*, No. Civ.A. 06-CV-1346, 2007 WL 2844870, at *2 (E.D.Pa. Sept.27, 2007) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1380 n. 1 and n. 2 (3d Cir.1995)) (internal citation omitted). "In addition, factual allegations within documents described or identified in the complaint may be considered if the plaintiff's claims are based upon those documents." *Woods v. Medlock*, No. 06-1590, 2008 U.S. Dist. WL 123845, at *2 (W.D.Pa. Jan. 9, 2008). Furthermore, in the Third Circuit, it is well settled that a court may consider administrative documents, such as a plaintiff's EEOC charges, and public records without converting the motion to dismiss to a motion for summary judgment. *See Turlip v. N. Pocono School Dist.*, No. 05CV1182, 2006 WL 547924, at * 4 n. 7 (M.D.Pa. March 6, 2006) (citing *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir 1993)); *Khalil v. Rohm & Haas Co.*, No. Civ. A. 05-CV-003396, 2005 WL 3111791, at *3 (E.D.Pa. Nov.18, 2005); *Rogan v. Giant Eagle, Inc.*, 113 F. Supp.2d, 777, 782 (2000). The Court will consider all of these sources in construing his claims, given Plaintiff's *pro se* status.

[2]

Plaintiff's brother, Michael Wormack brought suit against this same Defendant on May 21, 2009, alleging, similarly, that his position at the VA was eliminated and he was not re-hired at a similar position, in retaliation for an earlier-filed charge of "systematic discrimination against black men working in positions gs-5 through gs-15." *Wormack v. Shinseki*, Civ. A. No. 09-628 (W.D.Pa 2009) (Docket No. 3), Complaint at 1-2. His case has subsequently closed after successful

Plaintiff is, and was at all times relevant to his claims, a Case Management Specialist / Social Worker, employed by Defendant at the VA. (*Id.*). He was hired at the VA Pittsburgh Healthcare system in March 2007. (Docket No. 12 at 1). During his yearly performance evaluation on or around October 17, 2007, Plaintiff received a "Less than Fully Successful" rating. (Docket No. 14 at 1). This evaluation was not made a part of Plaintiff's file at the time, but it was shown to him during a meeting with his supervisor, Ron Rabold. (Docket No. 23-1 at 1). Plaintiff was never given a copy of the evaluation. (*Id.*) Plaintiff complained to his immediate supervisors about the "Less than Fully Successful" rating in several meetings, but no change was made. (Docket Nos. 12 at 1, 23-1 at 1). Plaintiff then sent an email to someone at the VA Office of Resolution Management ("ORM"). (Docket Nos. 14 at 1, 23-1 at 1). A response to that email informed Plaintiff that an email to the ORM was not the proper means of filing an EEOC claim. (*Id.*). Plaintiff then emailed an EEOC counselor and eventually filed an EEOC complaint, before the 45-day deadline for filing same. (Docket No. 14-2).

After Plaintiff had contacted the EEOC, but before the actual complaint was filed, the "Less Than Fully Successful" evaluation was changed to "Fully Successful." (Docket No. 12 at 1). Plaintiff states that, during a meeting, Ron Rabold changed the form, which was eventually put in his file. (Docket No. 12 at 1).[3] In a November 8, 2007 letter, submitted by Plaintiff in support of

---

mediation. (*Id.* at Docket No. 22).

[3]Plaintiff has repeatedly sought discovery, to obtain a copy of the initial evaluation form with the "Less Than Fully Successful" rating on it. As discussed below, his entire V.A. personnel file and his EEOC file have been produced to him, and the evaluation is not there. Although this lack of documentation causes Plaintiff some concern (*see* Docket No. 14 at 2), it need not concern the Court at this stage, since the Court accepts his allegations as true and assumes that there was an initial evaluation that was subsequently changed.

his claim, EEOC counselor Lisa Bartko indicated that on November 5, 2007 Plaintiff had first reported to the ORM "that [he had] been discriminated against when on October 17, 2007, [he] received a poor evaluation," and that the "Resolution" of said claim was "Upgrade evaluation." (Docket No. 14-2). Nonetheless, Plaintiff continued to feel that he had been discriminated against and sent an email to Ms. Bartko on November 19, 2007 stating that:

> I am contacting you regarding what I believe to be a discriminatory action taken against me by my supervisor's supervisor. I believe my evaluation was intentionally suppressed to hinder my advancement and also to aid in a possible future termination. I believe this is being done in retaliation due to my brother Michael Wormack, raising claims that systematic discrimination exist at the Pittsburgh Healthcare system, and because I am a black male. I believe that an investigation of my charge will show that Black males are denied positions at GS-5 and above and if they are hired they are dealt with harsher on their evaluations.

(Docket No. 14-3). Plaintiff then filed a complaint of Employment Discrimination on December 18, 2007, reiterating these same complaints, and referencing his November 19, 2007 email. (Docket No. 6-5). Plaintiff complained that his initial "Less Than Fully Successful" rating was discrimination, and, evidently, did not feel that the resolution, changing it to "Fully Successful," was an adequate one. (*Id.*).

In addition to the specific claim regarding his October 2007 evaluation, Plaintiff also makes a number of other allegations of discrimination or of adverse employment actions which he attributes to discrimination, including the general averments "that Black males are denied positions at GS-5 and above and if they are hired they are dealt with harsher on their evaluations." (Docket Nos. 14-3, 32-1). In his Complaint, Plaintiff summarizes his claims in a section entitled "ALLEGATIONS," stating, in full:

> 1. Mr. Wormack was retaliated against due to his brother filing similar claims for protected EEO activity.

2. Mr. Wormack was discriminated against because he is a black male.
3. Mr. Wormack was paid less because he is a black male.
4. Mr. Wormack was harassed because he is a black male.
5. Mr. Wormack was denied promotions because he is a black male.
6. The Department of Veterans Affairs elevated EEO numbers to misrepresent that more black man [sic] were working at the Pittsburgh Division than actually did, to conceal systematic and intentional discriminatory actions against Mr. Wormack and countless other individuals.

(Docket No. 1 at 2). He makes the following factual allegations in support of these general claims. He contends that he "has been rejected from 4 different positions he had applied for." (*Id.* at 1, Docket No. 36 at 34). He also states that he was "[a]sked to complete assignments other Social Workers of similar description are not required to do" and that he "was given a heavier workload then [sic] the other social workers of similar description." (Docket Nos. 1 at 1-2, 36 at 25-27, 33, 48, 52-53). He has not provided any examples of projects assigned to him or of other workers who received less work or were paid more than him. (Docket No. 36 at 25-27, 33, 48, 52-53). He was hired as a "Grade 12 Social Worker," has remained at that grade, and has received salary step increases and bonuses. (Docket No. 36 at 22-23, 57).

## II. PROCEDURAL HISTORY

The procedural history is lengthy for a case at the motion to dismiss stage, which reflects the time and opportunities afforded to Plaintiff to clarify the nature of his claims to assist the Court in deciding the Motion to Dismiss. Plaintiff, proceeding *pro se*, filed this complaint against Defendant on July 14, 2009. (Docket No. 1). After waiving service, Defendant responded with a Motion to Dismiss or in the Alternative, Motion for Summary Judgment, and a Brief in Support. (Docket Nos. 5, 6). This is the motion before the Court, but subsequent proceedings have altered its nature since

5

it was originally filed. In its original form, the instant motion argued for dismissal pursuant to FED.R.CIV.P.12(b)(1), since the Court lacked jurisdiction over Plaintiff's Equal Protection Act claim, and pursuant to FED.R.CIV.P. 12(b)(6), since Plaintiff had failed to state a claim upon which relief could be granted – in particular, that Plaintiff was untimely in initiating the EEOC process and had not exhausted his claims at the EEOC level. (*Id.*). In the alternative, Defendant moved for summary judgment on those same grounds. (*Id.*). Defendant attached, as exhibits to the brief, various VA and EEOC records of Plaintiff's evaluation and his EEOC complaint, to support the untimeliness and failure to exhaust defenses. (Docket Nos. 6-1 to 6-6).

Plaintiff filed a Response to the motion on October 1, 2009 (Docket No. 12), and Defendant filed a Reply Brief one week later. (Docket No. 13). Plaintiff then filed a Reply Brief on the same topic on October 12, 2009 (Docket No. 14), before the Court held a Case Management Conference on October 22, 2009. (Docket No. 15). At that Conference, the parties expressed interest in participating in alternative dispute resolution, and accordingly the Court held ruling on the pending motion in abeyance and agreed to request that a Magistrate Judge convene a settlement conference. (*Id.*). The Court did so, and referred the case Magistrate Judge Cathy Bissoon, for mediation and / or settlement conference. (Docket No. 16). Upon notice from Magistrate Judge Bissoon that the settlement / mediation conference had not resolved the case, the Court convened a Telephone Status Conference, which was held on December 21, 2009. (Docket Nos. 17-19). At this second conference with the Court, Plaintiff indicated that time for discovery would be needed for him to counter Defendant's contentions in the pending Motion; Defendant argued that no discovery was needed. (Docket No. 19). The Court advised the parties that if Defendant wanted a stay of

discovery, then he should move for same, and entered an order setting a schedule for such a motion. (Docket Nos. 19, 20).

Defendant filed a Motion to Stay Discovery the next day. (Docket No. 21). Two weeks later, after the deadline had passed for Plaintiff to respond, the Court granted Defendant's motion. (Docket No. 22). The next day Plaintiff filed a "Motion for Rule 56(f) further Discovery," which was, in essence, a late response to Defendant's Motion to Stay. (Docket No. 23). Nonetheless, the Court ordered a response from Defendant, who filed said response on January 19, 2010. (Docket No. 24). In light of the dispute, the Court held a hearing on Plaintiff's motion on January 25, 2010. (Docket No. 26). At the hearing, the Court heard argument and accepted evidence on both Plaintiff's pending motion for discovery and on the underlying merits of the case, as they affected Defendant's pending Motion to Dismiss, or in the Alternative Motion for Summary Judgment, and took both motions under advisement. (*Id.*) The Court also ordered Plaintiff to search his own files and provide any documentation of the alleged October 17, 2010 evaluation to Defendant's counsel, as well as ordered Plaintiff to request his EEOC file from Defendant's counsel. (Docket No. 27).

At a subsequent Telephone Status Conference, the parties informed the Court that Defendant had provided a copy of the EEOC file to Plaintiff, but Plaintiff had not located any documentation in his possession. (Docket No. 28). The Court, considering Plaintiff's *pro se* status, allowed him additional time to find and produce said documents, and ordered Defense counsel to produce a copy of Plaintiff's VA personnel file to him; the Court then ordered the parties to advise the Court's law clerk of their progress on a telephone call, before a fourth Telephone Status Conference with the Court on March 9, 2010. (*Id.*). Plaintiff and counsel for Defendant did exchange such documents, and informed the Court of same before the Telephone Status Conference. (Docket No. 30).

Immediately after the fourth Telephone Status Conference, Defendant filed a "Motion to Withdraw Without Prejudice, His Argument that Plaintiff was Untimely in Contacting an EEO Counselor," as Plaintiff had succeeded in raising a question of fact as to the date of his evaluation and the timeliness of his EEOC complaint. (Docket No. 29). As the parties had exchanged the relevant documents and had informed the Court of same at the Telephone Status Conference, the Court issued an order: denying Plaintiff's Motion for Rule 56 (F) Further Discovery (Docket No. 23), without prejudice; granting Defendant's motion to withdraw the untimeliness claim (Docket No. 29) and determining that it would treat Defendant's pending motion (Docket No. 5) as a motion to dismiss only; setting a schedule for Plaintiff to file any supplement to his Reply Brief (Docket No. 14), and for Defendant to respond; and, finally, scheduling a second hearing and oral argument to address the pending Motion to Dismiss. (Docket No. 31).

Plaintiff did file a Supplement (Docket No. 32), with additional exhibits attached, and Defendant filed a Response (Docket No. 33). At the appointed time for the hearing on the Motion to Dismiss, Plaintiff failed to appear, and the Court rescheduled the hearing. (Docket No. 34). Finally, on May 11, 2010, the Court held a hearing and oral argument on the instant motion, during which both sides offered argument and the Plaintiff offered sworn testimony in support of his claims. (Docket No. 35). A transcript of these proceedings was ordered. (Docket No. 36).

As the instant motion has been exhaustively briefed and argued, and the Court has received substantial evidence regarding same, it is now ripe for decision.

## III.    LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the lack of subject matter jurisdiction over a plaintiff's claims. *See* FED.R.CIV.P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Petruska v. Gannon University*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortenson v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir.1977)). As he is the party asserting jurisdiction, Plaintiff "bears the burden of showing that [his] claims are properly before the district court." *Development Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir.1995); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)("When subject matter jurisdiction is challenged under Rule 12(b) (1), the plaintiff must bear the burden of persuasion").

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); and FED. R. CIV. P. 8(a)(2)(a valid complaint requires only "a short and plain statement of the claim" showing entitlement to relief."). The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953; *Fowler*, 578 F.3d at 210-11. The Court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 129 S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555);

*see also Fowler*, 578 F.3d at 210; and *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). The determination of whether a complainant has sufficiently pled a claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556); *see also Fowler*, 578 F.3d at 210-11 (holding that in light of *Iqbal*, a district court should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts" pled are sufficient to show a "'plausible claim for relief.'"). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

As noted above, because Plaintiff is proceeding *pro se*, his allegations are liberally construed and he is held to a less stringent standard than an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the United States Court of Appeals for the Third Circuit and District Courts within the Third Circuit, including this Court, have applied the *Iqbal* and *Twombly* factual plausibility standard when evaluating *pro se* complaints. *See e.g., Capogrosso v. Rabner*, 588 F.3d 180, 184-85 (3d Cir. 2009); *Goodson v. Maggi*, Civ. A. No. 08-44, 2010 WL 1006901 (W.D. Pa. Feb. 22, 2010); *Paschal v. Billy Beru*, Civ. A. No. 08-1144, 2009 WL 1099182 (W.D. Pa. Apr. 23, 2009), *aff'd*, 2010 WL 1401465 (3d Cir. 2010)(not reported); *Van Tassel v. Lawrence County Domestic Relations, et al.*, 659 F.Supp.2d 672 (W.D. Pa. 2009). Further, in light of *Twombly* and *Iqbal*, this Court need not credit a *pro se* plaintiff's conclusory factual and legal assertions. *Capogrosso*, 588 F.3d at 185-85.

## IV.    ANALYSIS

Plaintiff has brought the instant suit pursuant to Title VII of the Civil Rights Act, 42 U.S.C.

§ 2000e et seq. ("Title VII"), alleging race discrimination, gender discrimination, retaliation, and

harassment in the workplace. Plaintiff also brought this lawsuit pursuant to the Equal Pay Act, 29

U.S.C. § 206(d) ("EPA"), alleging that female coworkers were paid more than him.

At this stage, the only remaining bases for Defendant's Motion to Dismiss are:

A.      Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction, as
        to the EPA claim.

B.      Rule 12(b)(6) Motion to Dismiss based on Plaintiff's failure to exhaust
        administrative remedies, as to the Title VII and EPA claims.

C.      Rule 12(b)(6) Motion to Dismiss based on Plaintiff's failure to state a claim
        upon which relief can be granted, as to the Title VII and EPA claims.

The Court will address each in turn.

**A.      Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction as to the EPA claim.**

Defendant argues that Plaintiff has not sufficiently pled the jurisdictional requirements for

his EPA claim. The EPA is part of the Fair Labor Standards Act, 29 U.S.C. Ch. 8 ("FLSA"), which

creates a private right of action against the federal government.  Under the FLSA, "[a]ny action to

recover the liability prescribed . . . may be maintained . . . in any Federal or State court of competent

jurisdiction by any one or more employees for and in behalf of himself or themselves and other

employees similarly situated." 29 U.S.C. § 216(b).  Therefore, federal courts can hear claims to

enforce the EPA because they arise under federal law (the FLSA).

Jurisdiction for EPA claims brought by federal employees depends on the amount in

controversy.  If the amount in controversy is greater than $10,000, then the United States Court of

Federal Claims has exclusive jurisdiction, pursuant to 28 U.S.C. § 1491 (the "Tucker Act"); if it is

less than $10,000, then the suit can be brought in the Court of Federal Claims or in district court, pursuant to 28 U.S.C § 1346(a)(2) (the "Little Tucker Act"). *Licata v. U.S. Postal Service*, 33 F.3d 259, 263 (3d Cir. 1994).

Defendant argues that Plaintiff has not made "any explanation of jurisdiction for the EPA claim," because he has not alleged an amount in controversy of less than $10,000. (Docket No. 6 at 14). Defendant points out that, "after nearly seven months and numerous submissions to the Court, Plaintiff has not raised a single argument with regard to jurisdiction."(Doc. No. 33 at 2). At oral argument, counsel for the Defendant argued that "it is more than safe to assume that [an award of compensatory damages] would be more than $10,000 and beyond the jurisdiction[al] limit." (Docket No. 36 at 12).

At oral argument, the only time that Plaintiff has explicitly addressed this question, he replied to questions about the amount of controversy as follows:

> THE COURT: [D]o you think your claim is under $10,000, or is it more than $10,000?

> MR. WORMACK: I don't – I'm sitting here trying to identify. It probably would be under $10,000, but that's just me sitting here guessing.

(Docket No. 36 at 20). This is the extent of Plaintiff's allegations as to the amount in controversy. The Court need not determine whether Plaintiff's assertion – "[i]t probably would be under $10,000, but that's just me sitting here guessing." – is sufficient to confer jurisdiction under the Little Tucker Act. Construing Plaintiff's claims and assertions liberally, the Court will treat the EPA claim as if Plaintiff has properly pled the jurisdictional requirements.

**B.     Rule 12(b)(6) Motion to Dismiss based on Plaintiff's failure to exhaust administrative remedies as to the Title VII and EPA claims.**

### 1.    *Plaintiff failed to exhaust all but one of his Title VII claims*.

A plaintiff must exhaust the administrative remedies available under Title VII (i.e. present the claim to the United States Equal Employment Opportunity Commission) before bringing a Title VII suit in federal court. *See* 42 U.S.C. §§ 2000e-5(b), (f) (2000); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Antol v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir. 1996). The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court. *Antol*, 82 F.3d at 1296. A plaintiff must exhaust those remedies by putting the EEOC on notice of each discriminatory act, and then by going through the EEOC process before bringing suit based on that act. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *McCann v. Astrue*, 293 Fed.Appx. 848, 850 (3d Cir. 2008).

Thus, if a plaintiff brings suit based on multiple alleged discriminatory acts, they must all have been exhausted at the EEOC level. Only if the separate acts "are not individually actionable, but when aggregated may make out a hostile work environment claim" can they be aggregated under the continuing violation doctrine and all made part of a single claim. *McCann* at 850. *National Railroad Passenger Corp. v. Morgan* "established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. The former must be raised within the applicable limitations period or they will not support a lawsuit." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (deriving from *Morgan* a "non-exhaustive list of discrete acts for which the limitations period runs from the act: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation.").

The discriminatory acts alleged by Plaintiff here cannot be aggregated because they are individually actionable. *Id.* In his Complaint and subsequent filings and representations to the Court, Plaintiff alleges a number of harms upon which he seems to base his Title VII claims, including: that he was given a "Less Than Fully Successful" evaluation which was eventually changed to "Fully Successful;" that he was rejected from four positions to which he applied; that he was asked to do work that other Social Workers were not required to do; that he was harassed to take [sic] another position; that he was given a heavier workload than other Social Workers; and that he is unable to advance positions in retaliation for filing a claim. (Docket No. 1 at 1-2). Even if these alleged discriminatory acts were able to be aggregated into an overall hostile work environment claim, such an omnibus claim would have to be filed with the EEOC and exhausted before filing in this Court. Those other alleged discriminatory acts were not included in Plaintiff's complaint to the EEOC and cannot support his claims in this case.

However, Plaintiff did present one claim to the EEOC: the claim that he received an undeserved "Less Than Fully Successful" evaluation on October 17, 2007, which was subsequently changed to "Fully Successful" after he complained. (*See* Doc. Nos. 1 at 1, 6-5, 6-6, 6-7, 14 at 1and 32-1). Plaintiff has thus only administratively exhausted a single claim, based on a particular harm, the "Less Than Fully Successful" evaluation.[4]

On the Complaint of Employment Discrimination form, submitted by Plaintiff to the EEOC on December 18, 2007, he states his "Claim(s)" as follows:

---

[4]

Defendant maintains that even Plaintiff's contacting the EEOC regarding the Unsatisfactory evaluation was untimely but Defendant has withdrawn that argument from the current Motion to Dismiss, since Plaintiff has raised a question of fact regarding when the initial evaluation took place. (Docket No. 29).

My evaluation was intentionally suppressed to hinder my advancement and also to aid in possible future termination.

Also in retaliation due to my brother Michael Wormack raising claims that systematic discrimination exist at Pittsburg [sic] Healthcare system & being that I am a black male. Blacks [sic] males are denied positions at GS-5 & above & if they are hired they are dealth [sic] w/ harsher on their evaluation.

(Docket No. 6-6).

In a follow-up email to Amelia McColtry at the Office of Resolution Management, dated

January 17, 2008 (Docket No. 32-1 at 7), Plaintiff wrote:

I wanted to make sure that the information provided below is listed in the complaint for I see no mention of it on the report I received, information to Amend the Counselor's report as read below:

I believe there has been a discriminatory action taken against me by my supervisor's supervisor. I believe my evaluation was intentionally suppressed to hinder my advancement and also to aid in possible future termination. I believe this is being done in retaliation due to my brother Michael Wormack, raising claims that systematic discrimination exist at the Pittsburgh Healthcare system, and because I am a black male. I believe that an investigation of my charge will show that Black males are denied positions at GS-5 and above and if they are hired they are dealt with harsher on their evaluations.

(Docket No. 32-1 at 7). A subsequent "Written Affidavit," dated May 27, 2008, which takes the

form of typewritten questions, to which Plaintiff wrote responses by hand, states that "[t]he claim

accepted for investigation is:"

Whether on the basis of race (Black), sex (Male, and reprisal for brother's EEO activity the complainant was treated in a disparate manner when:

On October 17, 2007, he received a "Fully Successful" performance evaluation which he believed was "intentionally suppressed" to hinder his advancement and lead to "possible future termination."[5]

---

[5]

There appears to be some confusion between the EEOC and Plaintiff as to the exact nature of the claim, i.e. whether the complaint was that Plaintiff received a "Fully Successful" rating or that he received a "Not Fully Successful" rating, and whether his issue was that his "Fully Successful" rating was somehow kept under wraps ("intentionally suppressed") or that the "Not Fully Successful" rating was, itself, an intentional suppression of his actual skill, in that it did not reflect it accurately.

(*Id.* at 2).  The "Written Affidavit" then contains a number of questions, which Plaintiff answered,

related to the "fully successful" rating, including:

> 6.  Why was the rating unacceptable to you?
> *a poor evaluation, then changed to fully success after I contacted ORM is
> unacceptable*
>
> . . . .
>
> 11.  Management indicated that your rating was not discrimination but an accurate
> reflection of your work performance for the year.  How would you respond?
> *If it were accurate, why was it changed from a poor evaluation to a fully successfull*
> [sic].  *With nothing else changed, why would a vice president say "this is how it is".
> Why would you say* [Plaintiff's] *documentation* [skill] *was not good, but after you
> reviewed others documentation it was the same. I would respond that it was
> discrimination & not an accurate reflection of my work performance for the year.*
>
> 12.  Please explain why you believe a rating of fully successful was being used to
> hinder your advancement and lead to your termination from employment.
> *I initially received an unsuccessful rating, which was change to fully successful after
> I contacted a EEO counselor.*
>
> 13.  Why do you believe that you were discriminated against because of race, sex,
> and prior EEO activity when you received a fully successful rating?
> *I believe I received an unsuccessful rating to be systematically discriminated against
> before my year is up for I am a black, male & reprisal for brother's EEO Activity*

(*Id.* at 3-5).  In sum, while Plaintiff made reference during the EEOC process to more than one

possible *reason* for discrimination against him (race, gender, systematic discrimination, and

retaliation for his brother's EEOC activity), the only allegedly discriminatory *act* which he presented

to the EEOC was his initial "Less Than Fully Successful" evaluation.

Furthermore, the other discrete discriminatory acts which Plaintiff raises in his Complaint

were not raised before the EEOC.   In his Complaint, Plaintiff avers that:

---

As will be discussed below, Plaintiff seems to feel that the initial "Not Fully Successful" rating
constitutes a harm, even though it was subsequently changed to "Fully Successful."

> *Since filing*, Mr. Wormack <u>has been rejected from 4 different position he had applied for</u>. <u>Asked to complete assignments other Social Workers of similar description are not required to do.</u> Mr. Wormack has been <u>harassed to take on another position</u>, but did not do so, which resulted in; Mr. Wormack was <u>given a heavier workload then the other social workers of similar description</u>. As well as changing his career status. Although the evaluation was changed to Fully Successful, the above actions continued to occur. *Mr. Wormack was and continues to be harassed and unable to advance positions for filing a claim of discrimination*.

(Docket No. 1 at 1-2 (emphases added)). The underlined portions of this quote are each discrete allegations of discriminatory acts that could be the basis of individual claims under Title VII, but none of them were advanced in the claim filed with the EEOC. Furthermore, the italicized language suggests that these alleged discriminatory acts were *in retaliation for* Plaintiff's initial EEOC filing. Retaliation for Plaintiff's EEOC filing cannot have been part of the claim presented to the EEOC, because any alleged retaliatory acts necessarily occurred after his EEOC filing. The EEOC could not decide if the acts were taken in retaliation for the filing itself, because that issue was not before it. Therefore, Plaintiff has not made that claim to the EEOC. Accordingly, Plaintiff has only exhausted a single claim, that his "Less Than Fully Successful" evaluation was "intentionally suppressed."

## 2. Plaintiff did not have to exhaust his Equal Pay Act claim before bringing suit.

Defendant argues that "[f]ederal employees who bring claims under the Equal Pay Act must exhaust the claims at the EEO level in the same manner as Title VII claims." (Docket No. 6 at 9 n. 2). In response, Plaintiff cites 29 C.F.R. § 1614.408 for the proposition that claimants under the Equal Pay Act need not exhaust administrative remedies before filing suit in district court. (Docket No. 32). Defendant asserts that the more general provisions of 29 C.F.R. § 1614.103(a) govern and require claimants to exhaust administrative remedies. (Docket No. 33 at 1-2).

Plaintiff is correct. Claims under the Equal Pay Act do not have to be exhausted administratively.[6] *County of Washington v. Gunther*, 452 U.S. 161, 175 n. 14 (1981) ("[T]he Equal Pay Act, unlike Title VII, has no requirement of filing administrative complaints and awaiting administrative conciliation efforts."); *Jordan v. Mel Blount Youth Home of Pennsylvania*, Civ.A. No. 05-1331, 2006 WL 1495513 at *4 (W.D.Pa. May 26,2006). Therefore, unlike many of Plaintiff's Title VII claims, Plaintiff's EPA claim cannot be dismissed for failure to exhaust administrative remedies.

**C.**     **Rule 12(b)(6) Motion to Dismiss based on Plaintiff's failure to state a claim upon which relief can be granted as to the Title VII and EPA claims.**

        *1.*     *Plaintiff Has Failed to State a Title VII Claim Upon Which Relief Can Be Granted*

Title VII makes it unlawful for an employer:

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2. It further provides, in part, that "except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. §

---

[6]

Defendant also points out that § 1614.408 cites to 29 U.S.C. § 216(b) (part of the FLSA), and suggests that since that section has been declared unconstitutional it calls into question the validity of § 1614.408. (Docket No. 33). This is not correct. An older version of § 216(b) was held unconstitutional in *Alden v. Maine* 527 U.S. 706 (1999), because it authorized suits against states in state court without the state having waived sovereign immunity. This has no effect on the validity of § 1614.408 or suits against the federal government.

2000e-2(m). Thus, to establish a prima facie case of Title VII discrimination, a plaintiff must show: "(1) that he is a member of a protected class, (2) that he suffered some form of adverse employment action, and (3) that this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently." *Page v. Trustees of University of Pennsylvania*, 222 Fed Appx. 144, 145 (3d Cir. 2007) (applying these three elements to a Title VII sex discrimination claim)(*citing Jones v. School Dist. Of Philadelphia*, 198 F.3d 403, 410 (3d Cir.1999)(applying these three elements to a Title VII race discrimination claim)). While it is uncontested that Plaintiff is a member of a protected class, Plaintiff's pleadings and factual allegations, even when construed in the light most favorable to him, do not plausibly suggest either the second or third element of a Title VII discrimination claim.

As discussed above, the only potentially adverse employment action properly before this Court is that Plaintiff was given a "Less Than Fully Successful" evaluation, which was then changed to "Fully Successful" after he contacted the EEOC. "In order to be entitled to relief under Title VII, a plaintiff must have suffered a cognizable injury." *Storey v. Burns Intern. Security Services*, 390 F.3d 760, 764 (3d Cir. 2004).

The Court of Appeals for the Third Circuit has "defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Id.* (*quoting Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir.2001)). Or, in terms of the statute, an adverse employment action occurs when an employer "fail[s] or refuse[s] to hire or to discharge any individual, or otherwise . . . discriminate[s] against any individual with respect to his compensation, terms, conditions, or

19

privileges of employment."   42 U.S.C. § 2000e; *see Storey*, 390 F.3d at 764.   "'[A]n adverse employment action involves some harm to an employee's employment opportunities'" *Caver v. City of Trenton*, 420 F.3d 243, 256 (3d Cir. 2005)(*quoting Nelson v. Upsala College*, 51 F.3d 383, 388 n. 6 (3d Cir. 1995)). "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the sine qua non. If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999).

In the present case, the only tangible effect of Defendant's actions on Plaintiff was that he received an "Less Than Fully Successful" evaluation.   While a negative evaluation could constitute an adverse employment action, it cannot when, as here, the evaluation was subsequently changed and no record of it remains in Plaintiff's employment record or personnel file. Moreover, Plaintiff has not alleged any actual harm that he suffered as a result of the evaluation.   While the exact timeline is unclear, it appears that the "Less Than Fully Successful" rating remained a part of Plaintiff's record for no more than a few weeks; the November 8, 2007 letter from EEOC counselor Lisa Bartko, indicates that the "Resolution" of his claim regarding the October 17, 2007 evaluation was "Upgrade evaluation."   (Docket No. 14-2).   Plaintiff states that he believes that "every time you get [an] evaluation you have an opportunity to get a bonus, or every time you have an opportunity to do an extra project, to show some type of benefit" but he is not sure of the bonus system, which is not public knowledge.   (Docket No. 36 at 29, 30, 33).   And, he does not actually allege a harm, such as being denied a bonus or an extra project, in the time period when, or as a result of, the "Less Than

Fully Successful" evaluation was in his personnel file. And, since that time, he has received salary step increases and bonuses. (Docket No. 36 at 22-23, 57).

However, even if an ephemeral negative evaluation could be considered an adverse employment action, Plaintiff has not pled facts to plausibly show that it "occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently." *Page*, 222 Fed Appx. at 145. As the Defendant puts it, "Plaintiff's complaint simply states he received an unfavorable review; therefore, there is discrimination." (Docket No. 6 at 12). And, while the Court is willing to look beyond the four corners of Plaintiff's Complaint, Plaintiff has still not provided anything beyond "mere conclusory statements," which "do not suffice" to plausibly establish an inference of unlawful discrimination. *Iqbal*, 129 S.Ct. at 1949. For instance, Plaintiff repeatedly asserts that there is "systematic discrimination" at the Veterans Administration, but, even when asked, he provided no examples of similarly situated co-workers who were making more than him, or situations when he had been given more work than others, or when he had been denied the opportunity to work on extra projects to earn bonuses. (Docket No. 36 at 24-25, 33-34, 53). Likewise, Plaintiff has never alleged any facts that would constitute direct evidence of discriminatory animus, such as discriminatory comments by a supervisor. Thus, Plaintiff has failed to allege any facts that could plausibly lead to an inference of unlawful discrimination.

Accordingly, his Title VII claim must be dismissed.

## 2.     *Plaintiff Has Failed to State an EPA Claim Upon Which Relief Can Be Granted*

Plaintiff's Equal Pay Act claim fails for similar reasons. To state a claim under the Equal Pay Act, a plaintiff must allege that he received lower pay than an employee of the opposite gender for

doing substantially the same work. *Wardlaw v. City of Philadelphia Street's Dept.*, 2010 WL 1718714, *2 (3d Cir. Apr. 29, 2010); *see Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *Brobst v. Columbus Servs. Int'l*, 824 F.2d 271, 274 (3d Cir.1987). Plaintiff's Complaint states conclusorily that "Mr. Wormack was also paid less than employees within the Pittsburgh Healthcare System who were female." (Docket No. 1 at 2). In addition to being the type of "mere conclusory statement" that *Iqbal* cautions a court from accepting, this statement fails to allege that the unnamed female employees were doing substantially the same work as him. *Iqbal*, 129 S.Ct. at 1949. And, when questioned about it later, Plaintiff still did not provide any factual allegations to support this claim:

> THE COURT: But my question to you, for bringing an Equal Pay Act claim --
> . . . .
> – you need to be able to point out to the Court that there are people with the same kind of skill level as you who are doing the same kind of job, but just because they are a woman, they are getting more money, whether it's by salary, whether it's by salary plus bonus, whether it's because they have a higher pay grade than you, so that they're paid at a higher level
> You need to be able to give the Court specifics.
> . . . .
> So, that's what I have to find out from you, who is it that you feel, or you believe, or you know is making more money, and how is that person making more money. But they can't be the President of the VA. It has to be at your level. As Mr. Karl said, they have to be a comparator to you.
> MR. WORMACK: I would have to answer this question in this fashion. When initially this claim and drawed out process was filed, I did feel I was given an excess amount of work, more so than my counterparts. So, do I feel I was doing more? So, yes, than the other co-workers I was working with.
> THE COURT: So, you're saying you were given more work to do than your co-workers?
> MR. WORMACK: Correct. So.
> . . . .
> THE COURT: Who were those co-workers that were getting less work to do?
> MR. WORMACK: Well, as far as names, off the top of my head, I'm blanking. I just, I guess, when we would go to meetings, I expressed this in the meetings, and staff meetings, that I felt I was getting a bigger case load to supervise.

. . . .

> THE COURT: Let's say hypothetically you have missed those opportunities [for bonuses]. Do you know of anybody in your peer group who had those opportunities and did get bonuses, and are, in your mind, making more money than you are?
> MR. WORMACK: I couldn't attest, Your Honor. You're correct, I couldn't attest to say that this person got a bonus on this time and date. I cannot say that.
> . . . .
> THE COURT: As a follow-up to my question, can you tell me if monetarily you are making less money than you think you should be making, as compared to other people who are doing the same job as you?
> MR. WORMACK: I can't say that. I won't say that. I can't. I really can't answer that.

(Docket No. 36 at 24-28, 36). Thus, Plaintiff has failed to allege any facts that could plausibly lead to the conclusion that female co-workers were paid more than him for doing substantially the same work.

Accordingly, Plaintiff's Equal Pay Act claim must be dismissed.

## V.    CONCLUSION

In sum, Plaintiff failed to administratively exhaust all but one of his Title VII discrimination claims, and the other claims are not properly before the Court. Plaintiff has failed to plead facts that would plausibly support the remaining Title VII claim or an EPA claim. The law of this circuit dictates "that leave to amend must be granted *sua sponte* before dismissing [civil rights] complaints." *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Although he has had ample opportunity to supplement his allegations, and the Court has considered those additional pleadings, Plaintiff has not ever amended his initial Complaint. Therefore, Plaintiff will be afforded the opportunity to file an amended complaint, including specific factual allegations to plausibly support his remaining claims.

Accordingly, Defendant's Motion to Dismiss [5] is **GRANTED,** and Plaintiff's Complaint is dismissed, without prejudice. Plaintiff shall file an amended complaint by **August 2, 2010** that cures the deficiencies outlined herein.

The Court also reminds Plaintiff that failure to comply with this Court's Orders, Policies and Procedures can result in dismissal for failure to prosecute.

An appropriate order follows.

<em>s/Nora Barry Fischer</em><br>United States District Judge

Dated: July 1, 2010

cc/ecf: Counsel of record.

Raymond D. Wormack
210 Snyder Street
Connellsville, PA 15425